```
        IN THE UNITED STATES DISTRICT COURT
            WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

**CATHIE REED**                                               **PLAINTIFF**

       v.           Civil No. 06-5209

**MERCY HEALTH SYSTEM OF**
**NORTHWEST ARKANSAS, INC.**                                  **DEFENDANT**

### O R D E R

Now on this 24th day of August, 2007, come on for consideration defendant's **Motion For Summary Judgment** (document #16) and **Plaintiff's Motion For Partial Summary Judgment On Her FMLA Interference Claim** (document #19), and from said motions, and the responses thereto, the Court finds and orders as follows:

1. Plaintiff Cathie Reed ("Reed") seeks damages pursuant to the Family and Medical Leave Act, **29 U.S.C. §2601 et seq.** ("FMLA" or the "Act"), alleging multiple violations of the Act culminating in her termination when she missed work in order to tend to her minor child's serious health care needs. She seeks lost wages and benefits, compensatory damages, liquidated damages, reinstatement, and attorney's fees.

Defendant Mercy Health System of Northwest Arkansas, Inc. ("Mercy Health") denies that it violated the Act, and contends that Reed was terminated for absenteeism and tardiness.

Both parties have moved for summary judgment, and the motions are now ripe for decision.

2. Summary judgment should be granted when the record,

viewed in the light most favorable to the nonmoving party, and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. **Walsh v. United States**, **31 F.3d 696 (8th Cir. 1994)**. Summary judgment is not appropriate unless all the evidence points toward one conclusion, and is susceptible of no reasonable inferences sustaining the position of the nonmoving party. **Hardin v. Hussmann Corp.**, **45 F.3d 262 (8th Cir. 1995)**. The burden is on the moving party to demonstrate the non-existence of a genuine factual dispute; however, once the moving party has met that burden, the nonmoving party cannot rest on its pleadings, but must come forward with facts showing the existence of a genuine dispute. **City of Mt. Pleasant, Iowa v. Associated Electric Co-op**, 838 F.2d 268 (8th Cir. 1988).

    3.    Pursuant to **Local Rule 56.1**, the parties have filed statements of facts which they contend are not in dispute. From those statements, the following significant undisputed facts are made to appear:

- Reed was employed by Mercy Health as a radiologist at St. Mary's Hospital ("St. Mary's"), one of Mercy Health's facilities, starting on June 7, 2004. Mercy Health is a covered employer under the FMLA.
- Reed was furnished a copy of St. Mary's employee policies (the "Policies") upon being hired. The

        Policies are also available on the St. Mary's computer system, and in the Human Resources office, and are reviewed with new employees during orientation.

* The Policies contain various provisions related to attendance and leaves of absence, including FMLA leave.
* The Policies treats FMLA leave as unpaid leave unless the employee has accrued sufficient paid time off ("PTO") to cover the leave.
* At all times relevant to this dispute, Reed was eligible for FMLA leave.
* The Policies contain information on how to apply for leave. The process for applying for FMLA leave was to contact the Benefits Coordinator, obtain appropriate certification forms, and take them to one's doctor for completion.
* During Reed's employment, an "attendance tracker" was used to record her absences and tardies.
* The Policies defined an "unscheduled absence" as a "failure to report for scheduled work." An unscheduled absence was assigned one "attendance point," and was recorded by placing an "S" on the attendance tracker.
* The Policies defined a "tardy" as "arriving in your assigned work area for work anytime after the scheduled shift begins." Tardies were recorded by placing an "L"

      on the attendance tracker. Three tardies were counted as one attendance point.

* Authorized leaves of absence, such as FMLA and personal leave, and leaving work early, were not "pointed."
* In computing the number of attendance points an employee had accumulated, points from the preceding six-month period were counted.
* St. Mary utilizes a progressive discipline procedure, set out in the Policies, although there are circumstances in which steps in the progression may be skipped.
* At Reed's ninety-day performance review, her attendance was evaluated as being "Below Expectations" due to three absences and a "few" tardies.
* On June 13, 2005, Reed initialed a document acknowledging an "attendance problem with being late and absentees," which stated that she was "aware that if she continues to be late or absent she will be given a decision day."
* On June 14, 2005, Reed received and signed her annual performance review. She received a "Needs Improvement" rating -- the lowest possible score -- on "Reports to work on time and as scheduled, completes work within designated time."

* On July 31, 2005, Reed's daughter attempted suicide, and was hospitalized through August 5, 2005.
* Following her hospitalization, Reed's daughter attended counseling sessions. Reed or her parents took the daughter to the counseling sessions, and when Reed took her, Reed was not pointed for leaving work early to do so.
* Reed inquired about possible FMLA leave on September 19, 2005, during a meeting with her supervisor, Mike McAdams ("McAdams"), and Vice President of Human Resources Rick Barclay ("Barclay"). At that point, Reed had used up most of her PTO, having only 11.47 hours remaining.
* At the September meeting, Reed was offered non-FMLA leave. She took a couple of days' leave, which was not counted against her for attendance purposes, but did not feel financially able to take a longer leave.
* In early October, 2005, Reed met with Benefits Coordinator Donna Beavers ("Beavers"), and stated that she had several counseling appointments scheduled for herself and her children. The two discussed the possibility that these appointments might be scheduled during non-working hours.
* On October 19, 2005, Reed requested and was given additional time off, from October 19-21 and from October

    24-25.  Because Reed had very little accumulated PTO, St. Mary's paid her $600 out of its Employee Crisis Fund.

* For the six-month period preceding her termination, Reed's attendance tracker reflected 8 1/3 points, 3 2/3 of which had been accumulated before her daughter's hospitalization.

* Reed's leaves of absence were not listed on the attendance tracker for the months of September and October, 2005.  However, she was tardy on October 26, and absent on October 27.

* On October 31, 2005, McAdams and Barclay presented Reed with a "Last Chance Agreement," which is used as a final alternative to termination.  Reed had not signed and returned the Last Chance Agreement when she was terminated on November 3, 2005.  However, she was not aware that there was a time frame for returning the Last Chance Agreement.

  4.  Under the FMLA, an eligible employee is entitled to twelve weeks of unpaid leave during any twelve-month period for various specified reasons, one of which is to care for a child with a serious health condition.[1]  Leave for this purpose may be taken intermittently or on a reduced leave schedule when medically

---

[1] Mercy Health appears to concede that Reed's daughter suffered from a "serious health condition" as that term is defined in the FMLA.

-6-

necessary. **29 U.S.C. §2612.** Upon return from such leave, the employee is entitled to be restored to the position held when the leave commenced, or to an equivalent position, without loss of benefits. **29 U.S.C. §2614.**

It is unlawful for an employer to interfere with the exercise of FMLA rights. **29 U.S.C. §2615.** It is also unlawful for an employer to retaliate against an employee for exercising FMLA rights. **Stallings v. Hussmann Corp., 447 F.3d 1041 (8th Cir. 2006).** The possibility of two different types of violations FMLA gives rise to two different types of claims, as explained in **Stallings**:

> Confusion often arises as to whether an employee's FMLA claim is really about interference with his substantive rights, or retaliation. The difference between the two claims is that the interference claim merely requires proof that the employer denied the employee his entitlements under the FMLA, while the retaliation claim requires proof of retaliatory intent. Although in some circumstances, a given set of facts will fall clearly into either [the interference or retaliation category], it appears that the lines between the two categories are not hard and fast.

**447 F.3d at 1051** (internal citations and quotation marks omitted).

In the case at bar, it appears that Reed is making both types of claim, and the Court will analyze the pending motions from that perspective.

5.  All that is required to prove an interference claim is that the plaintiff "was denied substantive rights under the FMLA for a reason connected with his FMLA leave." **Stallings, 447 F.3d**

-7-

**at 1050**. To the extent that Reed's claim is an interference claim, Mercy Health attacks it by contending that Reed cannot show she was denied her substantive rights under the Act. Mercy Health argues that Reed was not pointed when she left early to take her daughter to counseling sessions, and that Reed failed to notify St. Mary's when she needed time off to take her daughter to counseling sessions, as required by **29 U.S.C. §2612(e)(2)**.

Giving the evidence all favorable inferences in favor of Reed, the Court believes that reasonable jurors could find that Mercy Health denied Reed her rights under the FMLA by failing to give her the information she needed to assert those rights.

Reed's situation was such that the type of FMLA leave appropriate for her was what is known as "intermittent leave." Intermittent leave would have allowed her to miss a part of a shift to take her daughter to counseling, without giving up her entire income for a period of weeks.

There is no evidence that Mercy Health offered intermittent FMLA to Reed. When she asked for help in dealing with the situation presented by her daughter's crisis, she was referred to the Policies. The explanation of FMLA leave in the Policies does not, however, give clear and unambiguous information about intermittent leave. In one place the Policies state:

> A childcare leave can only be taken in a continuous time period and may not be taken on an intermittent or reduced work schedule basis. Eligible spouses who both work for the health system are limited to a total of 12

> weeks of leave between them for the birth or placement of a child or for the care of a parent or child with a serious health condition.

In another section, the Policies state:

> If a co-worker takes leave on an intermittent basis . . . for foreseeable and planned medical treatment of the co-worker or family member, the health system may, in it's [sic] sole discretion, transfer the co-worker during the leave to an alternative position with equal pay and benefits which better accommodates the intermittent or recurring leave.

A jury might find that from these provisions, Reed would not have been able to determine for sure whether she could use intermittent FMLA leave to attend to her daughter's health problems.

Nor did Barclay clarify the situation when Reed, according to her testimony, asked him whether FMLA Leave covered her situation. Reed testified that Barclay and McAdams told her that the situation did not fall under FMLA, but that "they were willing to let me have a few days at that time to kind of get myself together. . . . A personal leave was mentioned to me."

Reed testified that she was referred to the Policies on personal leave, and found that there was no guarantee that she would still have her job when she came back to work after taking personal leave. The Policies provide, with regard to personal leave, that

> [a] co-worker's reinstatement from a leave of absence is subject to personnel requirements at the time the co-worker seeks reinstatement and is able to resume work. Co-workers on leave of absence are not guaranteed

-9-

>     reinstatement to work or placement in their former or
>     alternate job positions or work shifts.

In addition, intermittent personal leave was clearly not an option under the Policies.

Benefits Coordinator LaDonna Beaver testified that Reed asked her for help in trying to work out a way to accommodate the counseling appointments that she had "for herself and her children."  Beaver testified that she suggested Reed make the counseling appointments after work, which would be a legitimate request in the context of discussing FMLA intermittent leave. See **29 C.F.R. §825.117** (employees needing intermittent FMLA leave must attempt to schedule leave so as not to disrupt employer's operations).  There is no indication, however, that Beaver was discussing the possibility of intermittent FMLA leave with Reed. Beaver's suggestion, in the absence of information about FMLA intermittent leave, could reasonably be interpreted simply as instructions to Reed that she would have to take care of her daughter's health needs on her own time.

When the foregoing is viewed in the light most favorable to Reed, and given all inferences it will fairly support, it raises a genuine issue about whether Mercy Health made it possible for Reed to utilize FMLA intermittent leave.  While Reed was not pointed when she left early to take her daughter to counseling, this occurred on an informal basis, and did not give Reed the option to plan for her daughter's treatment, secure in the

knowledge that it would not affect her job to do so.  "FMLA's purpose is to help working men and women balance the conflicting demands of work and personal life.  The law . . . was designed to prevent individuals . . . from having to choose between their livelihood and treatment for their . . . family members' serious health conditions."  **Caldwell v. Holland of Texas, Inc., 208 F.3d 671, 676 (8th Cir. 2000)**.

Mercy Health's contention that Reed failed give notice when she needed time off to take her daughter to counseling sessions -- even if accurate -- does not justify summary judgment.  Unless Reed was aware of the existence of FMLA intermittent leave, she can hardly be charged with a failure to give notice of needing to take it.  In addition, Reed testified that she was refused leave on at least one occasion when she needed to take her daughter to a medical appointment, and thus did not expect to be granted leave on other occasions.

Mercy Health also contends that it is entitled to summary judgment on Reed's interference claim because Reed cannot show any damages.  Mercy Health argues that money damages are limited to wages and benefits lost, or out of pocket expenses such as the cost of providing care, under **29 U.S.C. §2617**, and that Reed had no such losses.  Reed's position is that she lost her job because of her attendance problems, and that those problems would have been less if she had been afforded FMLA leave.  The Court finds

that Reed has raised a genuine issue of material fact as to damages, and thus Mercy Hospital is not entitled to summary judgment on Reed's interference claim.

While the foregoing analysis persuades the Court that Mercy Health is not entitled to summary judgment on Reed's interference claim, it does not justify summary judgment in favor of Reed on that claim. The matter is simply one that must be presented to the trier of fact, and Reed's motion for summary judgment on the interference claim will be denied as well.

6. To establish a prima facie case of FMLA retaliation, Reed must show "that she engaged in activity protected under the FMLA; that she suffered an adverse employment action; and that a causal connection existed between that adverse employment action and the protected activity." **Darby v. Bratch, 287 F.3d 673, 679 (8th Cir. 2002).**

In the absence of direct evidence of retaliation, a retaliation claim follows the familiar burden-shifting paradigm of **McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).** Once a plaintiff makes out a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action, and, that happening, the plaintiff must then demonstrate that the employer's reason is pretextual. **Stallings**, *supra,* **447 F.3d at 1052.**

Mercy Health contends that Reed cannot prevail on her

retaliation claim because she cannot show any causal connection between her termination and her FMLA leave or leave requests.  It contends that Reed was terminated for excessive absences and tardiness that began before Reed's daughter's suicide attempt, and for absences and tardies that had nothing to do with her daughter's need for counseling.

The temporal relationship between events may be used to establish a causal link, although "mere coincidence of timing . . . is rarely sufficient to establish the causative element." **Hite v. Vermeer Mfg. Co., 446 F.3d 858, 866 (8th Cir. 2006).**  Here, the evidence showed that Reed's attendance became spottier after her daughter's suicide attempt on July 31, 2005, and that she was terminated on November 3, 2005, after taking personal leave from October 19-21 and October 24-25.  A jury could find that taking this personal leave was protected activity, on the theory that Reed should have been advised of the availability of FMLA intermittent leave. When the close temporal relationship between Reed's taking personal leave and her termination is considered in conjunction with (a) the evidence that Reed made inquiries about FMLA leave but was not informed of the availability of intermittent FMLA leave, and (b) that Reed was considered an good employee in all respects other than attendance, the Court believes that Reed has shown the existence of a genuine issue of material fact as to whether she was terminated for engaging in protected

-13-

activity.

In addition, while Mercy Health has articulated a legitimate, non-retaliatory reason for the termination, a jury might well find that such reason was pretextual. Mercy Health contends that Reed was terminated for excessive absences and tardiness that began before Reed's daughter's suicide attempt, and for absences and tardies that had nothing to do with her daughter's need for counseling. The evidence before the Court shows that in the six-month period preceding her termination, Reed's attendance tracker reflected 8 1/3 points, only 3 2/3 of which had been accumulated before her daughter's hospitalization, and the evidence is conflicting with regard to the reason for Reed's absences and tardies after the suicide attempt. In addition, while Mercy Health contends that it did not point Reed for times when she left early, there is a "post-it" note attached to her attendance tracker noting that she left early on three occasions in September and October. An inference may be drawn from this note that Mercy Health was tracking the times when Reed left early, even if she was not pointed for doing so.

The foregoing evidence is such that a jury could find Mercy Health's articulated reason for Reed's termination to be pretextual. The Court, therefore, finds that summary judgment is not appropriate on Reed's retaliation claim.

7.  Mercy Health also contends that it is entitled to

summary judgment on Reed's claims for equitable relief (front pay or reinstatement), because she would have been terminated when it learned that she had failed to disclose, on her application for employment at St. Mary's, that she had worked at another Mercy Health facility.

Mercy Health relies on **Mckennon v. Nashville Banner Publishing Co.**, **513 U.S. 352 (1995)**, where, in the context of an age discrimination case, the Court examined a claim that during discovery the employer learned of information on the basis of which it would have legitimately terminated the employee. The Court there held that

> as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

**513 U.S. at 361-62**.

This argument relates to a short period (December 22, 2003, to February 17, 2004) when Reed worked at St. John's Hospital in Cassville, Missouri. She did not list this job on her application to work at St. Mary's, and answered "no" when asked if she had ever worked at a Mercy Health hospital.

While there is no dispute about the law with regard to after-acquired evidence, Reed does dispute that she could legitimately be terminated for failing to include information about her St. John's experience on her application. She states that she did not

know St. John's was a Mercy Health hospital when she applied at St. Mary's, and left the job off of her application because she was only there for a short period of time.

The Court does not find it necessary to resolve this issue before trial.  If Reed succeeds on her FMLA claims at trial, so that equitable relief becomes an issue, the Court will take up the matter at that time.

**IT IS THEREFORE ORDERED** that defendant's **Motion For Summary Judgment** (document #16) is **denied.**

**IT IS FURTHER ORDERED** that **Plaintiff's Motion For Partial Summary Judgment On Her FMLA Interference Claim** (document #19) is **denied.**

**IT IS SO ORDERED.**

           /s/ Jimm Larry Hendren
           **JIMM LARRY HENDREN**
           **UNITED STATES DISTRICT JUDGE**